IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Virginia Kay Clark, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:06-CV-327 |
| | : | |
| v. | : | District Judge Susan J. Dlott |
| | : | |
| Gospel Light Publications, | : | ORDER GRANTING MOTION FOR |
| | : | SUMMARY JUDGMENT |
| Defendant. | : | |

This matter comes before the Court on Defendant's Motion for Summary Judgment (doc. 26).  Plaintiff Virginia Kay Clark has sued her former employer, Defendant Gospel Light Publications ("Gospel Light" or "the Company"), for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.  The Company contests Clark's claims and has moved now for summary judgment.  For the reasons that follow, the Company's motion is **GRANTED**.

**I.     BACKGROUND**

Except where otherwise indicated, this statement of facts is derived from the Company's Statement of Proposed Undisputed Facts (doc. 26-2) and Clark's Response thereto (doc. 29-2). Clark is a former full-time warehouse merchandise handler for Gospel Light, which provides warehousing and distribution services for Christian publications.  Clark's job required nearly constant climbing, bending, stooping, and lifting.  She was frequently required to lift boxes up to 50 pounds.

Clark was eligible to take up to twelve weeks of FMLA leave from Gospel Light within a 12-month period.  Plaintiff did not take FMLA leave in 2003 or 2004.  However, prior to

1

December 2004, Clark was on a final disciplinary warning at Gospel Light for recurring attendance problems, and another unexcused absence could have resulted in her termination.

Plaintiff faced a serious health condition beginning in December 2004. She had 12 weeks of FMLA leave eligibility at that time. Gospel Light provided Clark with FMLA paperwork needed for her anticipated work absences. Clark underwent two surgeries between December 2004 and April 2005 and took multiple weeks of FMLA-approved leave as a result. Clark's second surgery was April 19, 2005. She did not return to work after April 19, 2005 or before Gospel Light terminated her employment, but the parties dispute whether Clark in fact attempted to return and whether she was medically eligible to return before she exhausted her FMLA leave allotment.

On April 15, 2005, prior to the second surgery, Clark's doctor, Elton Kerr, M.D., from the Oxford OB-GYN medical office, informed Gospel Light in writing that Clark would be off work for six weeks following an April 19, 2005 hysterectomy. Six weeks from April 19, 2005 was May 31, 2005.

However, following the surgery, on April 21, 2005, Dr. Kerr wrote a note on a prescription pad sheet that stated that Clark could return to work on May 9, 2005. Clark asserts that this return to work note was or should have been delivered to Gospel Light. Clark testified at her deposition that she was told by an employee of the Oxford OB-GYN office on April 21 that the office would fax the return to work slip to Gospel Light. (Clark Dep. 83-86.) However, the Oxford OB-GYN records custodian did not have a copy of the return to work note in Clark's file and could not verify that the medical office had delivered the note to Gospel Light. (Tuley Dep. 46-49.) The note itself bears no indications that it was faxed or delivered by the medical

office to anyone. (Id. at 48-49 & ex. 16.)

Clark also initially testified that she personally delivered a copy of the return to work note to Gospel Light sometime between April 21 and May 6, 2005. (Clark Dep. 94.) But she conceded that she may not have hand-delivered the note when questioned about it further. (Id. at 95-96.) She stated that Wes Scenters, Clark's former supervisor at Gospel Light, would know if she had personally delivered the return to work note because she would have given it to him. (Id.) Scenters stated in an affidavit that he had never seen the return to work note. (Scenters Aff. ¶ 5.) Jim Barnes and Gina Roberts, who then handled human resources ("HR") for Gospel Light, concurred that the Company never received the written note permitting Clark to return to work on May 9. (Barnes Dep. 49-50; Roberts Dep. 58-59.)

The Company does not dispute, however, that Clark told Jim Barnes and Gina Roberts orally that she had been medically cleared to return to work on May 9 without restriction. (Clark Dep. 101, 108.) On or about April 29, 2005, Gospel Light faxed a letter to Dr. Kerr with a copy of the job description for Clark's job to ensure that Dr. Kerr understood the physical requirements of the position because May 9 was much earlier than the initial projected return for Clark of May 31. (Roberts Dep. 42-43; Kerr Aff. ex. C.)

On May 6, 2005, Clark received a message on her telephone answering machine from Jim Barnes, the administrative services manager for the Company, telling her not to return to work on May 9. (Clark Dep. 83, 93.) Also on May 6, Clark complained about black discharge, pain in her abdomen, and problems with urination at a visit to the Oxford OB-GYN office. That same day, Dr. Kerr wrote a new return to work note stating that Clark could return to work on May 30, 2005. The return to work on May 30 note was faxed from the medical office to Gospel

3

Light on May 9, 2005. Clark testified at her deposition that she felt able to return to work on May 9, despite the fact that she had complained to her doctor about pain and other medical problems the week prior. (Clark Dep. 66, 103.)

As of May 9, 2005, Clark had two and two-fifth weeks of FMLA allowance remaining. Gospel Light sent Clark a written notice on May 9 that her 12-week FMLA allowance would expire on May 25, 2005 unless she returned to work sooner. Gospel Light advised Clark to inform it if the FMLA calculation was wrong.

On an unspecified date, Dr. Kerr initialed a handwritten entry on a faxed letter from Gospel Light that indicated that Clark wanted to return on May 23, 2005 without restriction. (Kerr Aff. ¶¶ 7-8.) Dr. Kerr averred that his initials indicated his assent to her request to return on May 23. (Id. ¶ 8.) However, the letter with the entry initialed by Dr. Kerr permitting Clark's return on May 23 without restriction was not delivered back to Gospel Light until May 31, 2005. (Roberts Dep. 42-45.) Dr. Kerr in his affidavit reaffirmed his opinion that Clark could have returned to work on May 23 without restriction. (Kerr Aff. ¶ 8.)

Clark remained absent from work the third and fourth weeks of May 2005 because, she testified, as part of her surgery recovery. She did not return to work on May 31, 2005, as had been originally anticipated, either. Gospel Light received two documents from Oxford OB-GYN on May 31, however. One document was the letter on which Dr. Kerr had initialed his approval for Clark to return to work on May 23 without restriction. (Roberts Dep. 42-45.) The second document complied with a request from Clark to identify if she had any work restrictions. Dr. Kerr stated that there was a risk to her health from repetitive lifting of 50 pounds or more.

On June 10, 2005, while still absent from work, Clark was examined at the hospital and

4

complained about severe post-operative pain. The initial hospital test revealed that Clark had a suspicious cyst. Dr. Kerr scheduled her for a pelvic CT on June 20, 2005. Dr. John Harlan from the Oxford OB-GYN office faxed a letter to Gospel Light dated June 10 requesting that Clark be excused from work from May 30, 2005 until she could be seen by the physician on June 24, 2005.

On June 16, 2005, Gospel Light terminated Clark's employment because she had exhausted her FMLA leave and Gospel Light had no assurance when she would be permitted to return to work. Gospel Light, by its calculation, had provided Clark with 12 weeks of FMLA leave plus an additional three and one-fifth weeks of non-FMLA leave between December 1, 2004 and the date of her termination. Clark does not dispute the calculation but contends that Gospel Light thwarted her attempts to return to work within the FMLA period. More than one week after her termination, on June 24, 2005, Dr. Harlan sent a notice to Gospel Light stating that Clark could return to work with no restrictions on that date.

Clark filed this suit against the Company on June 1, 2006 asserting an FMLA retaliation claim and an FMLA interference claim. The Company has denied liability and is moving now for summary judgment.

## II. STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if no genuine issues as to material facts exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn

therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986).

The moving party may support a motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court's task is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. A genuine issue for trial exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

### III. ANALYSIS

The FMLA entitles an eligible employee to twelve weeks of leave during any twelve-month period because of, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Sixth Circuit recognizes two distinct theories of recovery–interference and retaliation–under the FMLA:

> The "entitlement" or "interference" theory arises from [29 U.S.C.] § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," and from [29 U.S.C.] § 2614(a)(1), which provides that "any eligible employee who takes leave ... shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the

6

> employee when the leave commenced; or (B) to be restored to an equivalent position." The "retaliation" or "discrimination" theory arises from [29 U.S.C.] § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

Arban v. West Pub. Corp., 345 F.3d 390, 400-01 (6th Cir. 2003).  Clark asserts separate claims under each theory.

**A.      FMLA Retaliation or Discrimination**

The FMLA prohibits an employer from discharging or in any other manner discriminating against an individual for opposing any practice made unlawful by the FMLA.  29 U.S.C. § 2615(a)(2).  Clark alleges that Gospel Light retaliated or discriminated against her by "refusing to allow her to return to work and by terminating her on June 16, 2005."  (Doc. 1 ¶ 29.)  To establish her FMLA retaliation claim, Clark must produce either direct or circumstantial evidence of retaliation.  Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003); Stonum v. U.S. Airways, Inc. 83 F. Supp. 2d 894, 899 (S.D. Ohio 1999).

Importantly, "a company does not violate the FMLA when it terminates an employee who is incapable of returning to work at the end of the 12-week leave period allowed by the Act."  Edgar v. JAC Prods., Inc., 443 F.3d 501, 509 (6th Cir. 2006) (citing Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784-85 (6th Cir. 1998)).  Gospel Light terminated Clark on the express basis that she had exceeded her FMLA leave allotment.  Gospel Light wrote in the termination letter dated June 16, 2005 as follows:

> Regrettably, I must inform you that as of May 25, 2005 your 12 weeks of leave under the federal Family and Medical Leave Act was exhausted.  As previously noted the state of Ohio does not mandate any additional leave rights beyond this time period.
>
> In accordance with our FMLA policy and as is permitted by FMLA regulations

7

>we can no longer hold your position open for you.  Due to business necessity we
>find it necessary to fill your position and therefore must terminate your
>employment at this time.

(Clark Dep. ex. 13.)  Clark does not dispute the FMLA calculation in Gospel Light's letter above.  Therefore, if Gospel Light did not wrongfully preclude Clark's return to employment on or before May 25, 2005, then Gospel Light did not violate the FMLA when it terminated her employment after May 25.

Gospel Light defends its employment decisions and analyzes Clark's retaliation claim using the indirect proof, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), as is appropriate when the plaintiff does not present direct evidence of retaliation.  See Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1184-85 (6th Cir. 1996).  Clark argues that Gospel Light should have permitted her to return to work on May 9, 2005 or May 23, 2005 and that she would not have exceeded the 12-week FMLA leave allotment if she had been permitted to return on either of those dates.

Under the McDonnell Douglas analysis, a plaintiff must first make a prima facie showing on the discrimination or retaliation claim.  If the plaintiff makes such a showing, the burden shifts to the employer to show a nondiscriminatory reason for its employment decision. Monette, 90 F.3d at 1186; see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).  The employer's motive is an integral part of the analysis "because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." Edgar, 443 F.3d at 508 (emphasis in the original).  If the employer satisfies this burden of production, then the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was not its true reason but was, in fact, a pretext

for illegal discrimination or retaliation. Burdine, 450 U.S. at 256; Monette, 90 F.3d at 1185-86. The plaintiff retains the ultimate burden of persuasion at all times. Burdine, 450 U.S. at 256.

To make a prima facie case of FMLA retaliation, Clark must show that: (1) she availed herself of a protected right under the FMLA, (2) she suffered an adverse employment action, and (3) there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action. Edgar, 443 F.3d at 508. The first prong of the prima facie case is met. Clark availed herself of FMLA rights when she began taking FMLA leave with Gospel Light's consent in December 2004. The second prong is also met. Clark has put forward evidence that Gospel Light did not allow her to return to work on May 9 or May 23 (causing her to continue to accrue FMLA leave absences) and later terminated her employment because she exceeded her FMLA leave allotment. Clark testified that Jim Barnes, the local manager in charge of HR functions for Gospel Light, instructed her in a telephone message on Friday, May 6 not to return to work on Monday, May 9. For purposes of this Order on summary judgment, the Court will assume that Clark's evidence is sufficient to establish the third prong, a causal connection, as well.[1]

The issue thus becomes whether or not Gospel Light refused to allow Clark to return to work on May 9 or May 23 in retaliation for Clark's taking FMLA leave or for a legitimate, nondiscriminatory reason. The Court will examine the May 9 return issue first. Gospel Light points to the lack of evidence demonstrating that it received Dr. Kerr's note permitting Clark to return to work on May 9. Clark admitted that she was unsure whether she delivered the note to

---

[1] The Court notes that temporal proximity between the protected activity and the adverse employment action can be sufficient to prove the causal connection prong of the prima facie case. See Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314 (6th Cir. 2001).

9

Gospel Light herself. The Oxford OB-GYN medical office had no information in its files indicating that it had sent the return to work note to the Company. Three Gospel Light employees, two in human resources and the third who was Clark's supervisor, testified that the Company did not receive the return to work note. Instead, Gospel Light relied on the best medical information it had on and before May 9: (1) an April 19 letter signed by Dr. Kerr that authorized her absence from the date of her hysterectomy in April until May 31 and (2) a subsequent return to work note signed by Dr. Kerr on May 6th that authorized her return to work on May 30. These medical certifications constituted a legitimate, non-discriminatory reason for Gospel Light to refuse to permit Clark to return to work on May 9. See Edgar, 443 F.3d at 513-14 (stating that medical information known to the employer prior to a termination decision can be asserted as a legitimate, nondiscriminatory reason for discharging an employee in a retaliation case).[2]

Clark's rebuttal evidence is not sufficient to establish pretext. A plaintiff may establish pretext by showing that the employer's proffered reason for an employment decision had no basis in fact, did not actually motivate the transfer, or was insufficient to motivate the transfer. Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 883 (6th Cir. 1996) (citing Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994)). Clark's contention that Gospel Light disregarded the medical certification permitting her return on May 9 fails outright because

---

[2] In retaliation claims, medical information learned after an employment decision has been made is not relevant to liability, but it may be relevant to limit the relief to which an employee is entitled consistent with the after-acquired evidence rule stated in McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995). Edgar, 443 F.3d at 514.

of the lack of evidence that the Company knew a written certification existed.  Even if Gospel Light had received the note permitting Clark to return to work on May 9, the note was superceded in effect by the subsequent medical certification signed by Dr. Kerr on May 6 and faxed to Gospel Light on May 9 authorizing Clark to return to work only on May 30.

Clark also contends that the Court should infer that Dr. Kerr only extended her return to work date until May 30 as a result of pressure being asserted by Gospel Light.  This contention too fails.  The medical certification authorizing Clark's return on May 30 speaks for itself.  Although Dr. Kerr stated in an affidavit that based on his contacts with Gospel Light he believed the Company wanted to delay Clark's return, he also stated that he based his medical certifications on "his medical judgment."  Dr. Kerr did not state, as Clark incorrectly suggests in her brief, that he wrote the new note authorizing Clark's return on May 30 only because Gospel Light told Clark not to return on May 9.  There simply is no factual basis upon which the Court can draw the inference that Dr. Kerr's medical opinion as of May 6 was anything other than that Clark was not medically able to return to work until May 30.

Finally, the fact that Clark might have believed she was physically able to return to work on May 9 does not change the analysis.  The FMLA regulations permit employers to require medical certification from a physician before allowing an employee to return from a FMLA medical leave:

> As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer may have a uniformly-applied policy or practice that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work.

11

29 C.F.R. § 825.310(a). Gospel Light's employee handbook specifies that employees returning from a medical leave must "provide a doctor's certificate verifying that you are able to safely perform the essential functions of your job, or can do so with reasonable accommodation." (Clark Dep. ex. 2 page 6.8.) However, Clark testified that she was not familiar with the written handbook. (Clark Dep. 33-34.) Additionally, Gospel Light HR employees testified that they told the Company's workers that the Company permitted a worker to return to work from a medical absence only with a physician's certification that the employee could work without restriction. (Roberts Dep. 60-67; Barnes Dep. 50-52, 58.) Clark does not offer evidence refuting that this was Gospel Light's policy.[3] Therefore, Gospel Light acted pursuant to FMLA regulation to the extent it required a simple medical certification. Accordingly, the Court finds that Clark cannot establish pretext for Gospel Light's decision to not permit Clark to return to work on May 9.

Clark also posits that Gospel Light should have permitted her to return to work on May 23, two days before she exceeded her 12-week FMLA leave allotment. At an unknown date,

---

[3] The Court notes that Gospel Light's policy requiring the medical certification to specify that the employee could work full duty or without restriction is itself a violation of the FMLA regulations. The regulations state that a return to work medical certification need only be a "simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c). Therefore, a medical certification that authorizes an employee to return to work, but does not address whether the employee can work without restrictions, is sufficient to trigger the employer's duty to reinstate the employee. Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1003-04 (6th Cir. 2005). The employer is permitted to seek clarification about potential work restrictions from the physician pursuant to the FMLA regulations after reinstating the employee. Id. Gospel Light's technical violation of the policy is not relevant here, however. Gospel Light did not prohibit Clark from returning to work on May 9 because the medical certification from Dr. Kerr was insufficient; rather, it prohibited her from returning to work because it never received the certification permitting Clark to return to work on May 9. Moreover, Dr. Kerr submitted a new certification dated May 6 extending Clark's leave period until the end of May 2005.

Dr. Kerr initialed a handwritten note on a document in Clark's medical file indicating his approval of Clark's request to return to work without restriction on May 23.  However, Gina Roberts, who handled HR duties at Gospel Light, testified that the Company did not receive this initialed notation until May 31, almost one week after Clark had exceeded her FMLA leave allotment.  Clark presents no evidence contradicting Roberts' testimony.  Clark remained away from work and she exceeded her 12-week allotment of FMLA leave on May 25.  Even if Clark had returned to work on May 23 with two days of FMLA leave remaining, she would have exceeded her leave allotment in June 2005.  On June 10, following the discovery that Clark had a suspicious pelvic cyst, the Oxford OB-GYN office faxed Gospel Light a letter signed by Dr. Harlan excusing Clark from work until June 24th.  Clark's total absences far exceeded the 12-week allotment after this "new" multiple-week absence in June 2005 caused by the pelvic cyst.  Clark's unsubstantiated assertion that she could have worked despite the discovery of the cyst again is legally irrelevant in light of the FMLA regulations and Gospel Light's policy of requiring medical certification.

The Court holds that the Company did not retaliate against Clark when it terminated Clark for exceeding her FMLA leave allotment on or after May 25.

**B.**     **FMLA Interference or Entitlement Claim**

In addition to prohibiting retaliation, the FMLA prohibits employers from interfering with an employee's attempts to exercise rights protected by the FMLA.  29 U.S.C. § 2615(a)(1).  Clark alleges in the Complaint that the Company interfered with her exercise of FMLA rights "when it refused to allow her to return to work before exhausting the leave permitted under 29 U.S.C. § 2612(a)(1)."  (Doc. 1 ¶ 23.)

13

To prevail on her interference or entitlement claim, Clark must prove the following: "(1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." Edgar, 443 F.3d at 507. An employer's intent is not a relevant consideration for interference claims. Id. However, incidental interference with an employee's FMLA rights is not a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct. Id. at 508. In evaluating an interference claim arising from the plaintiff's termination from employment, courts "should consider all of the medical evidence bearing on the employee's ability to timely return, not just the evidence available at the time of the adverse employment action." Id. at 512.

Only the fifth element of the interference test is contested here. Plaintiff's claim fails to the extent it is based on either (1) Gospel Light's refusal to allow Clark to return to work on May 9 or May 23 or (2) Gospel Light's decision to terminate Clark's employment on June 16, 2005. An employer is not liable for FMLA interference for terminating an employee who "is incapable of returning to work, or of performing an essential function of her position, at the end of the statutory-leave period." Edgar, 443 F.3d at 512 (citing, in part, 29 C.F.R. § 825.214(b)).[4] The

---

[4] The regulation states as follows:

> If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA. However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA).

29 C.F.R. § 825.214(b).

14

evidence here established that Clark was medically unable to return to work even after she exceeded her 12-week FMLA leave allotment.

Gospel Light did not interfere with Clark's rights by refusing to allow her to return to work on May 9.  There is no evidence that Gospel Light ever received the April 21 note signed by Dr. Kerr authorizing Clark to return to work on May 9.  Rather, the evidence demonstrates that Gospel Light was informed by Dr. Kerr in notes dated April 15 and May 6 that Clark was not authorized to return to work until the end of May 2005.  Likewise, Gospel Light did not receive the somewhat ambiguous notation initialed by Dr. Kerr which would have authorized Clark's return on May 23 until May 31, six days after she had exhausted her FMLA 12-week leave allotment.  Even if Clark had returned to work on May 23 with two days of FMLA leave remaining, she would have exceeded her leave allotment in June 2005.  On June 10, the Oxford OB-GYN office faxed Gospel Light a letter excusing Clark from work until June 24, 2005 following the discovery that Clark had a suspicious pelvic cyst.   In sum, there is no evidence to support Clark's claim that Gospel Light interfered with her FMLA rights by refusing to permit her to return to work when she was medically able to do so.

Clark additionally argues for the first time in her brief opposing Gospel Light's motion that Gospel Light per se interfered with her FMLA rights by having unauthorized contact with Dr. Kerr and the Oxford OB-GYN office.  Dr. Kerr averred that he believed Gospel Light wanted to delay Clark's return to work based on the contacts Gospel Light made to the medical office about Clark's health.  (Kerr Aff. ¶¶ 7, 12.)  Clark cites FMLA regulations which state that an employer's health care provider can contact an employee's health care provider to seek

clarification about a medical certification with the employee's permission. 29 C.F.R. §§ 825.307(a) & 825.310(c).[5] Gospel Light appears to have technically violated these regulations to the extent that HR employees from Gospel Light, as opposed to a health care provider retained by Gospel Light, contacted Oxford OB-GYN to seek clarification of Clark's condition and to provide the physicians with the physical requirements for the position of merchandise handler. However, Clark admitted at her deposition that she gave Gospel Light permission to contact Oxford OB-GYN directly so that she did not have to act as an intermediary. (Clark Dep. 31-33.) Moreover, the FMLA is not a strict liability statute. Coker v. McFaul, No. 06-3587, 2007 WL 1892092, slip op. at *6 (6th Cir. June 29, 2007). Employees seeking relief under an interference or entitlement theory must establish that a violation of the statute or regulations caused harm. Id.; see also Sconfienza v. Verizon Pa., Inc., No. 3:05cv272, 2007 WL 1202976, at *14-15 (M.D.

---

[5] The first regulation provides in relevant part:

> (a) If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employee's health care provider. However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification.

29 C.F.R. § 825.307(a). The second regulation provides in relevant part:

> A health care provider employed by the employer may contact the employee's health care provider with the employee's permission, for purposes of clarification of the employee's fitness to return to work. No additional information may be acquired, and clarification may be requested only for the serious health condition for which FMLA leave was taken. The employer may not delay the employee's return to work while contact with the health care provider is being made.

29 C.F.R. § 825.310(c)

Pa. Apr. 23, 2007) (finding no evidence of prejudice resulting from defendants' unauthorized contact with the employee's physician). Clark has failed to show harm. Dr. Kerr stated in his affidavit that he wrote employee return to work notes based on his "medical judgment." (Kerr aff. ¶ 5.) Clark does not present any evidence, but only unsupported supposition, that the Company's contacts with Oxford OB-GYN influenced Dr. Kerr or Dr. Harlan in any way when they prepared return to work certifications for Clark. Accordingly, Clark cannot establish an FMLA interference claim based on the evidence presented.

## IV. CONCLUSION

For the reasons stated above, Defendant Gospel Light Publications has established as matter of law that it did not violate Plaintiff Virginia Kay Clark's rights under the Family Medical Leave Act. Defendant's Motion for Summary Judgment (doc. 26) is hereby **GRANTED**.

IT IS SO ORDERED.

                                                  ___s/Susan J. Dlott_____
                                                  Susan J. Dlott
                                                  United States District Judge